UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 4:17-cv-10023-MOORE/McAliley

TIMOTHY REYNOLDS, for himself and
others similarly situated,

       Plaintiff,

v.

BOURBON STREET PUB, INC., a Florida corporation,
NEW ORLEANS HOUSE OF KEY WEST, INC., a Florida
corporation, and JOSEPH J. SCHROEDER, an individual,

       Defendants.

_____/

**PLAINTIFF'S UNOPPOSED MOTION**
**FOR FINAL APPROVAL OF SETTLEMENT**

The Plaintiff, TIMOTHY REYNOLDS, ("Reynolds"), on behalf of himself and other employees similarly situated, by and through undersigned counsel, files his Unopposed Motion for Final Approval of Settlement, and states:

## I. PRELIMINARY STATEMENT

### A. Introduction

The Plaintiff seeks final approval of the Settlement Agreement, (DE 54-1), entered into with the Defendants and preliminarily approved by Order (DE 56) of this Court on October 23, 2017,[1] with an amendment to the proposed Notice approved by Order (DE 58) on October 30, 2017.  As set forth in more detail below, and subject to Court approval, Defendants have agreed to pay under the Settlement up to $209,859.76 to 35 putative Class Members,[2] $70,000.00 in fees and costs, a $3,500.00 service payment to the Named Plaintiff, the employer's share of payroll taxes on the wage portion of the settlement, the cost of the settlement administration up to $7,500.00, and $370.00 to Ryan Demo for a general release, for a total of over **$290,929.90**.

---

[1] The Court signed the Order (DE 56) on 10/20/17, and the Clerk entered it on the docket on 10/23/17.
[2] Two putative Class Members filed timely requests for exclusion, and one filed an untimely document that appears to be a request for exclusion. The settlement amounts for the three individuals who submitted opt out requests are as follows: Billie Bowman $2,985.27 (timely); Ryan Acker $1,286.52 (timely); and Wade Hoffman $2,043.03(untimely).

The proposed Settlement satisfies all the requirements for approval under Fed.R.Civ.P. 23 and the FLSA.  In this Motion, the Plaintiff respectfully requests the Court grant this Unopposed Motion, finally approve the Settlement, certify the Settlement Class pursuant to Rule 23(a), (b)(3) and the FLSA, appoint Timothy Reynolds as class representative and Samara Robbins Bober and Peter Bober as Class Counsel, direct settlement payments be made consistent with the Settlement, require Defendants to provide documentation of settlement checks endorsed, deposited, or cashed and of checks paid to the to the Florida Department of Financial Services' Bureau of Unclaimed Property to the Settlement Administrator, retain continuing jurisdiction, dismiss with prejudice the case and New Orleans House of Key West, consistent with the terms of the Settlement, and declare the Settlement binding on all Class Members who did not opt out of the Settlement.  The Plaintiff has separately filed an Unopposed Motion for Approval of Attorneys' Fees, Costs and Expenses of $70,000.00, which is equivalent to 24% of the Settlement Fund.

### B.   Procedural Background

On February 21, 2017, the Named Plaintiff, Timothy Reynolds, on behalf of himself and other employees similarly situated, filed a Complaint against the Defendants Bourbon Street Pub, Inc., ("Bourbon Street"), New Orleans House of Key West, Inc., ("New Orleans"), and Joseph J. Schroeder.  The Complaint alleges overtime and minimum wage claims pursuant to the Fair Labor Standards Act (FLSA) (Counts 1 and II), and minimum wage claims pursuant to the Florida Minimum Wage Amendment (FMWA) (Count III).  The Plaintiff's Complaint seeks to bring a FLSA collective action, and a FMWA Rule 23 class action.  Defendants filed an Answer (DE 18) denying the Plaintiff's allegations and denying the Plaintiff is entitled to relief.

On April 25, 2017, the Court entered an Order (DE 31) granting preliminary certification of an FLSA collective action and authorizing notice to putative Class Members.  The deadline to file consents to join the FLSA collective action has elapsed. Five (5) individuals opted in. (Consents, DE Nos. 7-1, 8-1, 9-1, 35, and 47).  The Defendants also have responded to written discovery, and produced more than 3,467 pages of documents, including time and pay records for bartenders.

On May 2, 2017, the Court held a settlement conference, but the Parties were unable to reach a settlement at that time.  On June 20, 2017, the Parties agreed to settle.  Upon the Parties' filing of a Notice of Settlement (DE 49), the Court entered an Order (DE 50) administratively

closing the case. On July 28, 2017, the Parties signed a more formalized Settlement (DE 54-1) of the FLSA and FMWA class and collective action claims.

On October 23, 2017, Court preliminarily certified the following FMWA Settlement Class for settlement purposes pursuant to Fed.R.Civ.P. 23(a) and (b)(3): All bartenders who worked for the Defendant Bourbon Street Pub, Inc. located at 724 Duval St, Key West, Florida at any time from February 21, 2012 to February 21, 2017 who were not paid a direct wage of at least the full Florida minimum wage for hours worked. The Court Order also allowed Notice of the Settlement to be provided to Class Members consistent with the terms of the Settlement, and appointed the Named Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel. On October 30, 2017, the Court entered an Order (DE 58), allowing the parties to amend the Notice.

The parties jointly selected Simpluris, ("Settlement Administrator"), a company experienced in class action settlement administration. **Exhibit A**, Declaration of Simpluris, Inc. ("Simpluris Decl."), ¶2 p. 2. There were 35 Rule 23 putative Class Members. *Id.* at ¶2 p. 3. Pursuant to the terms of the Settlement, defense counsel provided the Settlement Administrator with contact information for Class Members. Simpluris Decl. ¶2 p. 3. On November 6, 2017, Plaintiff's counsel provided the Settlement Administrator with any updated contact information for putative Class Members. *Id.* at ¶3 p. 3; *Supplemental* Declaration of Samara Bober ("S. Bober Decl.") ¶10, **Exhibit B**, attached hereto. On November 20, 2017, in accordance with the Settlement and the Court's Orders (DE Nos. 56 and 58), the Settlement Administrator mailed Notice to all Class Members, and sent a reminder postcard on December 12, 2017. Simpluris Decl. ¶¶5 and 7. The full Notice also was published in the Key West Citizen Newspaper. *Id.* at ¶8. Defense counsel has confirmed that the Notice also was posted in the office at Bourbon Street Pub. The period for class members to opt out of the litigation or object to the Settlement closed January 4, 2018. *Id.* at ¶10. Two putative Class Members submitted timely requests for exclusion, and one class member submitted an untimely document, (Simpluris Decl. ¶¶7 and 10) which appears to request that he be excluded from the lawsuit and lists reasons why he does not want to be part of the lawsuit. S. Bober Suppl. Decl. ¶11. Copies of those documents are attached hereto as **Exhibit C** (Billie Bowman), **Exhibit D** (Ryan Acker), and **Exhibit E** (Wade Hoffman).[3]   No timely objections to the Settlement were filed. It is now appropriate for the Court to determine as a

---

[3]The addresses and phone numbers of these individuals have been redacted on the documents filed.

final matter whether the Settlement reached by the parties is fair, reasonable, and adequate. The case is scheduled for a Final Fairness Hearing on Monday, February 5, 2018.

### C.  Factual Background and Summary of the Case

The Defendant Bourbon Street is a pub located in Key West, Florida.  New Orleans House is a hotel located above the pub.  Declaration of Timothy Reynolds (DE 19-1), Declaration of Wesley Dwyer (DE 19-2), Declaration of Scott Jahn (DE 19-3) at ¶3.  The Named Plaintiff was formerly employed as a bartender from around November 2009 to November 2016. Reynolds Decl. (DE 19-1) at ¶2. The Defendant Schroeder is the owner of the pub and hotel. Complaint at ¶¶18 and 21; Reynolds Decl. (DE 19-1) ¶5.

During the relevant period, Bourbon Street bartenders performed similar work in that they sold drinks to customers in the pub as well as the outdoor area behind the pub.  Reynolds Decl. (19-1) at ¶4, 20; Dwyer Decl. (DE 19-2) at ¶4, 18; Jahn Decl. (DE 19-3) at ¶4, 20. Defendants paid the Named Plaintiff and other bartenders on an hourly basis, below the full Florida and federal minimum wage by claiming a $3.02 tip credit pursuant to the FLSA and FMWA. Complaint ¶¶30, 33, 38, 39, 48; Reynolds Decl. (DE 19-1) ¶¶6, 7, 20; Dwyer Decl. (DE 19-2) at ¶¶6, 7, 18; Jahn Decl. (DE 19-3) ¶6, 7, 20.   An example of the Employee Earnings Records (DE 54-2) provided by Bourbon Street, shows the reduced minimum wage paid to the Plaintiff Reynolds from 2012 to 2016.

The Plaintiff and other bartenders allege Defendants made improper deductions from the bartender's tips for cash register shortages. (Reynolds Decl. (DE 19-1) ¶¶8-10, 20; Dwyer (DE 19-2) at ¶¶8-10, 18; Jahn Decl. (DE 19-3) ¶¶8-10, 20.  The Plaintiff alleges that such deductions violated the requirement that tipped employees be allowed to retain all their tips.   The Plaintiff also alleges that bartenders were not informed of the required information set forth in §203(m), making Defendants ineligible to take a tip credit.  Reynolds Decl. (DE 19-1) at ¶17; Dwyer Decl. (DE 19-2) at ¶16; Jahn Decl. (DE 19-3) at ¶17.  Defendants dispute these allegations, and deny any violation of the tip credit occurred.

The Plaintiff also has alleged he and other bartenders worked off-the-clock.  Complaint at ¶¶52, 69; Reynolds Decl. (DE 19-1) ¶¶6, 13-17, 20; Dwyer Decl. (DE 19-2) ¶¶6, 12-15, 18; Jahn Decl. (DE 19-3) ¶¶6, 13-17, 20.  The Plaintiff also claims bartenders had to buy logo t-shirts. Reynolds Decl. (DE 19-1) ¶18; Dwyer Decl. (DE 19-2) ¶17; Jahn Decl. (DE 19-3) ¶18. Defendants deny bartenders worked off-the-clock or paid for logo t-shirts.

As a result of these alleged unlawful pay practices, the Plaintiff maintains he and the Class Members are entitled to (1) the full minimum wage for all hours worked, less amounts already paid for wages; (2) recoupment of all tips allegedly illegally retained, (3) reimbursement for buying Bourbon Street logo t-shits, and (4) reasonable attorneys' fees, costs and expenses. Defendants have maintained that Plaintiff and the Class Members are not entitled to any recovery for these allegations, and have consistently disputed all allegations of unlawful pay practices.

The allegations of the Complaint (DE 1), the exhibits submitted with the Plaintiff's Unopposed Motion (DE 54),[4] the three previously filed Declarations (DE Nos. 19-1 to 19-3) of former bartenders, the Declaration of the Settlement Administrator, the Supplemental Declaration of Plaintiff's Counsel, Samara Robbins Bober, and the other exhibits attached hereto allow the Court to satisfy itself that final approval of FLSA and FMWA Settlement and certification of an FMWA Settlement Class are appropriate. Should the Court require additional factual detail to support this Unopposed Motion, both Parties request the opportunity to provide supplement information.

## II.  SETTLEMENT AGREEMENT TERMS

### A.  **The Settlement Amounts**

The Settlement Agreement provides that the Defendants Schroeder and Bourbon Street Pub, Inc. shall pay a Gross Settlement Fund that includes the following payments: (1) $3.02 for all hours on the Employee Earnings Record for each Qualified Claimant from February 21, 2013 to February 21, 2017, which hours are summarized in Exhibit 1 to the Settlement Agreement, (DE 54-1), with a minimum payment of $100.00; (2) applicable federal, state and local taxes required to be withheld and/or paid by Defendants on Qualified Claimants' payments; (3) the additional employer's portion of payroll taxes on the back pay portion of the settlement; (4) any Service Payment approved by the Court for the Named Plaintiff up to $3,500.00; (5) $70,000.00 in all attorneys' fees, costs, and expenses if approved by the Court; (6) all fees, costs, and expenses of the Settlement Administrator up to $7,500.00; and (7) $370.00 to Ryan Demo for  a general release. Qualified Claimants are defined in the Settlement as Class Members who do not

---

[4]The Plaintiff's Unopposed Motion for Preliminary Certification contains the flowing exhibits: the Settlement (DE 54-1), Employee Earnings Record (DE 54-2); General Release of Reynolds (DE 54-3); General Release of Demo (DE 54-4); Supplemental Declaration of Reynolds (DE 54-5); and, Declaration of Samara Robbins Bober (DE 54-6).

opt out of the settlement.  The total amount of these payments, assuming 100% participation, is **$290,929.90**, plus the employer's share of payroll taxes on the wage portion of the Settlement.

*Thus, under the settlement, each Qualified Claimant will receive the equivalent of $3.02 for 100% of all record hours worked for four years prior to the date the lawsuit was filed (i.e. from February 21, 2013 to February 21, 2017).*  The Class Members' settlement payments will be allocated fifty percent to back wages and fifty percent to liquidated damages.  Defendants are responsible for making the payroll tax payments on the settlement award, issuing the settlement checks, and delivering the checks to the Settlement Administrator.  The Settlement Administrator is responsible for mailing the checks, drawn on Defendants' account, to the Qualified Claimants. Settlement, (DE 54-1) at Part II(vii), (xvi), and Part III.

### B.  Releases

In exchange for these settlement terms,

> all Class Members who do not opt out of the settlement shall release Defendants against all minimum wage claims under Article X, §24 of the Florida Constitution, the Florida Minimum Wage Act, Florida Statute §448.110 for any minimum wage claims asserted in the Complaint in the Class Action Wage case for the time period of February 21, 2012 to February 21, 2017. Any Class Member who does not opt out of the settlement and who endorses, deposits, or cashes a settlement check also shall release all FLSA claims for overtime and minimum wages asserted in the Complaint in the Class Action Wage case from February 21, 2014 to February 21, 2017. The settlement check to Qualified Claimants shall state under the place for endorsement that endorsement of the check shall release that individual's FLSA claims alleged in the Complaint for the period of February 21, 2014 to February 21, 2017. Only Qualified Claimants who endorse, deposit, or cash their settlement checks shall be deemed to have released their FLSA claims asserted in the Class Action Wage case.

Settlement (DE 54-1) at Part VII at pp. 9-10.  Thus, if a Qualified Claimant does not endorse, deposit, or cash his settlement checks, such Qualified Claimant will not release his FLSA claims.

Reynolds and Demo also separately have signed individual mutual general releases (DE 54-3 and 54-4) on behalf of themselves only, and Demo will be receiving $370.14 for execution of that separate general release.

### C.  Eligible Employees

The Parties identified 35 current and former bartenders who worked at Bourbon Street at any time from February 21, 2014 to February 21, 2017.  Those individuals were listed at Exhibit 1 to the Settlement Agreement (DE 54-1).

### D. Service Award

In addition to his individual award, the Named Plaintiff, who actively participated in the case, is applying for a service payment in recognition of the service he rendered on behalf of the Class, ("Service Award"). The Settlement is not conditioned on the award of a Service Award.

### E. Timing of Settlement Payments

Within one hundred (100) days of the Court's Order granting final approval of the Settlement, the Defendants Schroeder and Bourbon Street are required to deliver the Settlement Administrator the settlement checks to the Class Members who did not opt out of the Settlement and to Bober & Bober, P.A. Settlement Part VI. Within fourteen (14) calendar days of the Settlement Administrator's receipt of the settlement checks, the Settlement Administrator is required to mail the check for fees and costs, service payment to the Named Plaintiff, and Settlement Payments to Qualified Claimants, in accordance with the Settlement and the Court's Order. Settlement, Part II(vii).

### F. Attorneys' Fees and Litigation Costs

By separate Unopposed Motion, Plaintiff's counsel is applying for an award of attorneys' fees and costs of $70,000.00, which amount is equivalent to about 24% of the settlement fund.

## II. MEMORANDUM OF LAW

### A. Procedure for Approval of the Settlement

In reviewing a proposed settlement that involves claims under the FLSA, a court must determine whether the proposed settlement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). When reviewing a Rule 23 class settlement, the standard is not whether the class member obtained "'the best possible deal,' but whether it is 'at a minimum, fair, adequate and reasonable.'" *Allen v. Alabama State Bd. of Ed.*, 190 F.R.D. 602, 608 (M.D. Ala. 2000) (*quoting Paradise v. Wells*, 686 F. Supp. 1442, 1448 (N.D. Ala. 1988)).

The determination of whether a proposed class action settlement is fair, reasonable, and adequate involves a two-step process. At the first stage where a court makes a preliminary determination whether to give notice of the proposed settlement, a court should approve notice to the settlement class and set a fairness hearing unless "obvious deficiencies" in the proposed

settlement place it outside the range of possible approval. *In re Prudential Securities Inc.,* 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

At the second stage, at issue in this Unopposed Motion, a court conducts a final "fairness hearing" at which time all interested parties are afforded an opportunity to be heard, and a court engages in a substantive evaluation of whether the settlement is fundamentally fair, reasonable, and adequate. *See In re Mid-Atlantic Toyota*, 564 F. Supp. 1379, 1384 (D. Md. 1983); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D. N.C. 1994). As set forth in detail below, the Plaintiff believes collective resolution of the claims of the Settlement Class is proper.

### B.  **FMWA and FLSA Hybrid Class Cases**

The FMWA permit plaintiffs to assert minimum wage claims on behalf of a class.  Fla. Const. Article X, Section 24(e). The FMWA's class action mechanism is different than an FLSA collective action because, among other things, Rule 23 class actions utilize an "opt-out" mechanism allowing individual claims to be litigated without formal consent. *Calderone v. Scott,* 838 F.3d 1101, 1104 (11th Cir. 2016). FLSA collective action and Rule 23 class actions, however, "are animated by similar concerns about the efficient resolution of common claims." *Id.* at 1103 (quoting *Hoffman-Laroche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). FMWA and FLSA minimum wage claims are analogous, and thus, "hybrid" class action suits under Rule 23 for Florida minimum wages and 29 U.S.C. § 216(b) for FLSA minimum wages and/or overtime wages may be maintained without conflict in the same proceeding. *Id.* at 1107 (11th Cir. 2016); Advisory Committee's Notes to Federal Rule 23(b)(3) ("The present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23, as amended.").

Both FMWA and the FLSA provide for recovery of unpaid minimum wages and also for liquidated damages of double the amount of any unpaid wages, and reasonable attorney's fees and costs. *See* 29 U.S.C. § 216 (b). The statute of limitations under the FLSA is two years for non-willful violations and three years for willful violations, while the FMWA allows employees to recover for four years of non-willful violations, and five years for willful violations. *Compare* 29 U.S.C. § 255(a) *with* Art. X, §24(e) and Fla. Stat. §95.11(2)(d), (3)(q).  In addition, the Florida minimum wage also is higher than the federal minimum wage, which the FLSA permits. *See* 29 U.S.C. §218(a); *see also* 29 C.F.R. § 778.5.

## C.  Standard Applicable to Rule 23 FMWA Class Certification

Fed.R.Civ.P. 23(a) provides four prerequisites for class certification: numerosity, commonality, typicality, and adequacy. Fed.R.Civ.P. 23(a).  In addition, Rule 23(b)(3) authorizes a class action when:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3).

Trial courts are given substantial discretion in determining whether to grant class certification. *Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 274 (S.D. Fla. 2003 (citing *Heaven v. Trust Co. Bank,* 118 F.3d 735, 737 (11th Cir. 1997); *Forehand v. Florida State Hospital at Chattahoochee,* 89 F.3d 1562, 1569 (11th Cir. 1996)).  "[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action." *Fernandez-Roque v. Smith*, 539 F.Supp. 925, 946 (N.D. Ga. 1982) (citing, 7 Wright and Miller, Federal Practice and Procedure, §1753, page 541 (1972)).  "[W]here a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 202-03 (S.D. N.Y. 2006).

At the time of certification, the Court also must define the class and class claims, issues, and defenses pursuant to Rule 23(c), and must appoint a class counsel pursuant to Rule 23(g). Below, the Plaintiff sets forth that all the foregoing requirements have been met such that final approval is appropriate.

### D.  Rule 23(a) Requirements Are Met

#### 1.  *Numerosity*

Rule 23(a)'s first requirement is that the putative class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1).  "[W]hile there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between

varying according to other factors.'"  *Cox v. American Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986) (citation omitted); *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir. 1986) (affirming certification of a class of "at least thirty-one individual class members"). "[T]he focus of the numerosity inquiry is not whether the number of proposed class members is 'too few' to satisfy the Rule, but 'whether joinder of proposed class members is impractical.'" *Bacon v. Stiefel Lab., Inc.,* 275 F.R.D. 681, 690 (S.D. Fla. 2011) (quoting *Armstead v. Pingree,* 629 F.Supp. 273, 279 (M.D. Fla. 1986)).

Here, the numerosity requirement has been met because based on Bourbon Street's records and a list provided to the Plaintiff, there were thirty-five (35) bartenders employed from February 21, 2012 to February 21, 2017 who were paid below the minimum wage and worked hours as a bartender.  Of those 35, two timely opted out of the settlement, and one filed an untimely request for exclusion, addressed more fully below.  Thus, the Class consists of at least 32 and maybe 33 members, depending if the Court allows the untimely opt out.  The potential Class Members were relatively easy to identify through Defendant Bourbon Street's employee records.  Moreover, joinder is impracticable not only because of the size of the class, but also because many of the potential Class Members are still employed.  *See generally Sanft v. Winnebago Indus., Inc.,* 214 F.R.D. 514, 524 (N.D. Iowa 2003) (compiling cases holding Rule 23's numerosity requirement satisfied because, where some class members are still employed by the defendant, "concern regarding employer retaliation or reprisal renders individual joinder less practicable").  Indeed, although the Plaintiff does not allege that any retaliation has occurred, the Plaintiff and other Opt-ins have stated that former and current bartenders who would be part of any class are fearful of the negative effect joining this case could possibly have on their employment.[5] Reynolds Decl. (DE 19-1) at ¶23; Jahn Decl. (DE 19-3) at ¶23; Reynolds Supplemental Declaration, ("Reynolds Suppl. Decl."), (DE 54-5), at ¶4. Such fears are typical in the employment context. Moreover, based on the contact information for bartenders employed within a three-year period, which was provided to Plaintiff's counsel for the purpose of the FLSA collective action, and based on research by undersigned counsel regarding changes of address, at least 8 of those 25 bartenders (i.e. 32%) have moved from Key West, making joinder more impractical due to geographic dispersion. DE 54-6, S. Bober Decl. at ¶8.

---

[5] The Plaintiff is not alleging that the Defendants actually engaged in any retaliatory conduct, only that class members have expressed a fear that it could happen.

## 2. *Commonality*

Rule 23(a)(2) requires there to be "questions of law or fact common to the class." Rule 23(a)(2). Generally courts "liberally construe [ ] the commonality requirement." *Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992) (citations omitted). "[A] class action must involve issues that are susceptible to class-wide proof." *Murray v. Auslander,* 244 F.3d 807, 812 (11th Cir.2001). "The commonality element is generally satisfied when a plaintiff alleges that '[d]efendants have engaged in a standardized course of conduct that affects all class members.'" *In re Checking Account Overdraft Litigation*, 275 F.R.D. 666, 673 (S.D. Fla. 2011) (citing *In re Terazosin Hydrochloride,* 220 F.R.D. 672, 687 (S.D. Fla. 2004)); *Agan v. Katzman & Korr, P.A.,* 222 F.R.D. 692, 697 (S.D. Fla. 2004); *In re AmeriFirst Sec. Litig.,* 139 F.R.D. 423, 428 (S.D. Fla. 1991). "Commonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1355 (11th Cir. 2009)(citation and internal quotation omitted).

Here, the Settlement Class shares many common factual and legal issues, as asserted in the Complaint, including:

(1) Whether the Defendants' deductions from bartender tips for register shortages invalidated the tip credit;

(2) whether Defendants provided bartenders with notice of the tip credit provisions in accordance with FLSA and FMWA;

(3) whether Defendants had a policy or practice of not paying bartenders the required minimum wage for all hours worked;

(4) whether the above-alleged wage policies or practices violated the FMWA and FLSA;

(5) whether Defendant's violations of the FMWA were willful;

(6) whether Defendant's violations of the FMWA were in good faith; and,

(7) for settlement purposes, the calculation of damages based on the hours set forth on the Employee Earnings Records (i.e., $3.02 for each record hour worked).

As supported by the bartender Declarations previously filed, (DE 19-1 to 19-3, and 54-5), as well as other documentary evidence, the Plaintiff alleges these common questions affect all Settlement Class members and can be resolved through common answers because the Plaintiff alleges that Defendants' uniform conduct occurred as a matter of company policy or practice.

Based on the foregoing, commonality exists because at least one issue exists that affects all or a significant number of the proposed Class Members.  Thus, the Plaintiff has satisfied the commonality requirement.

### 3.  *Typicality*

The third requirement, typicality, "measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Wooden* v. *Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262,1287 (11th Cir. 2001). The claim of a class representative is typical where the named plaintiff's claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class.  *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  A class representative can satisfy the typicality requirement despite substantial factual differences when there is a 'strong similarity of legal theories.'" *See Murray* v. *Auslander,* 244 F.3d 807, 811 (11th Cir. 2001) (quoting *Appleyard* v. *Wallace,* 754 F.2d 955,958 (11th Cir. l985)).  Once the class representative demonstrates that the same unlawful conduct affected both him and the rest of the class, factual variations among the individual claims generally will not defeat typicality. *Id.*

Here, the Named Plaintiff asserts that he and all Settlement Class Members worked as bartenders for Defendants during the applicable time period; the Class Members were all paid less than the full Florida and federal minimum wage through utilization of a tip credit; and Defendants had a uniform practice of deducting for register shortage of bartenders, failing to pay for all hours worked, charging for logo t-shirts worn for work, and not informing bartenders of the required information for taking a tip credit.  Complaint (DE 1) ¶79; DE 19-1, Reynolds Decl. (DE 19-1) ¶¶2, 6-11, and 14-18, 20.  The Declarations of bartenders Reynolds, Jahn, and Dwyer, support that these alleged of violations were typical as to other Bourbon Street bartenders. Jahn Decl. (DE 19-3) ¶¶6, 8-18, 20; Dwyer Decl. (DE 19-2), ¶¶6, 8-18.  Because the claims of the Named Plaintiff are identical to the claims he is pursuing on behalf of the Class, the typicality requirement is satisfied.  *See Alonso v. Uncle Jack's Steakhouse, Inc.*, 2011 WL 4389636, at *5 (S.D. NY Sept. 21, 2011) ("The claims of the named Plaintiffs are typical of the class, in that named Plaintiffs, like all Class Members, were tipped employees of Defendant in the relevant time period, and sustained similar damages from Defendant's alleged unlawful practices.").

4. *Adequacy*

The fourth prerequisite, adequacy, requires that class counsel be "qualified, experienced, and generally able to conduct the proposed litigation," and that the named plaintiff not have "interests antagonistic to those of the rest of the class." *Griffin* v. *Carlin,* 755 F.2d 1516, 1533 (11th Cir. 1985). Class representatives must "fairly and adequately protect the interests of the class," Fed.R.Civ.P. 23(a)(4), and must, therefore, "possess the same interest and suffer the same injury as the Class Members." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997).

Here, the named Plaintiff will fairly and adequately protect the interests of the Class. The Plaintiff has no relationship with Defendants except that he formerly was employed by them. The Plaintiff has and will continue to vigorously pursue the claims of the Class, and is familiar with the action. To date, Plaintiff Reynolds has assisted undersigned counsel, attended a settlement conference, and submitted declarations in support of this Motion and the previously filed Motion for Preliminary Certification of FLSA Collective Action. The Named Plaintiff has interests that are parallel, and not antagonistic, to the proposed class. He has taken an active role as an advocate on behalf of all Settlement Class Members, which culminated in the Settlement Agreement. Moreover, he will receive an allocation of the settlement based on the same methodology as the other Settlement Class members, with the exception of seeking a modest service payment for his time and effort in litigating this case.

Under Rule 23(g), a district court that certifies a class action must also appoint class counsel who will "fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(g)(1)(B). Here, the Plaintiff's counsel has vigorously prosecuted this case, they are qualified, knowledgeable of wage and hour litigation, and they are capable of representing the proposed class. Plaintiff's counsel already has demonstrated their competency through their investigation into this class and collective action as well as obtaining preliminary certification of FLSA collective action claim. Proposed Class Counsel also have experience in litigating class action, collective action, and individual wage claims on behalf of employees. S. Bober Decl. (DE 54-6), ¶¶1-3; S.Bober Suppl. Decl. ¶4. Proposed Class Counsel have the resources to commit to this case. Moreover, Defendants are paying the cost of the Settlement Claims Administrator, up to $7,500.00 and the Parties anticipate that administration of the class will be less than that amount. For the foregoing reasons, the Court should appoint Samara Robbins Bober and Peter J. Bober as Class Counsel.

**E.  Rule 23(b)(3) Requirements Are Met**

Here, the Plaintiff seeks certification pursuant to Rule 23(b)(3).  Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  As set forth below, Rule 23(b)(3)'s requirements are satisfied.

### *1.  Common Questions of Law and Fact Predominate*

"Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."  *Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1357 (11th Cir. 2009). Common issues predominate if those issues that are subject to generalized proof predominate over those that are subject to individualized proof. *Veal v. Crown Auto Dealership, Inc.,* 236 F.R.D. 572, 579 (M.D. Fla. Mar. 30, 2006).  "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 809 (2011).  A court may consider settlement as "a factor in the calculus" of whether class certification is appropriate. *Amchem Products, Inc., et al. v. George Windsor, et. al.*, 521 U.S. 591, 619-622 (1997)).

Here, the Plaintiff has alleged that the Defendants are not entitled to take a tip credit.  The requirements an employer must prove it met to qualify for a "tip credit" under 29 U.S.C. §203(m) are: (1) the tip credit is claimed for qualified tipped employees; (2) "the employee has been informed by the employer of the provisions of" §203(m); (3) "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m).  Where an employer fails to meet the requirements for taking a tip credit, the employee is entitled to the "full minimum wage for every hour worked." *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979).   Although bartenders received tips for their work, an "employer is prohibited from using an employee's tips . . . [a]s a credit against its minimum wage obligations. . . ."  29 C.F.R. § 531.52.

Here, common questions certainly predominate. The Plaintiff's claim for an invalid tip credit centers on a uniform practice of making deductions from bartender tips for shortages. The issue of whether bartenders were able to retain control over their tips is a predominant issue that predominates over any individualized issue.  The Plaintiff has further alleged an independent

basis for invalidation of the tips credit: Defendants failure to inform as required to §203(m).  29 U.S.C. §203(m) (stating tip credit does not apply unless the tipped employee "employee has been informed by the employer of the provisions of this subsection"); 29 C.F.R. §531.59(b) (April 5, 2011) (requirements to inform).  Moreover, the Plaintiff has alleged that bartenders were not paid for all hours worked and charged for logo t-shirts.

These common experiences will predominate in consideration of the relevant legal inquiries.  *Williams-Green v. J. Alexander's Restaurants, Inc.*, 277 F.R.D. 374, 383 (N.D. Ill. Sept. 1, 2011) (finding  plaintiff satisfied predominance requirement because if the defendants had "operated an improper tip pool, then liability will be established as to each proposed class member" on that basis).  Moreover, the damages calculations for the class settlement will be relatively straightforward because each class member would receive the equivalent of $3.02 for each record hour worked.  Thus, the Plaintiff has satisfied the predominance requirement.

### 2.  *Superiority*

In the second part of the 23(b)(3) analysis, a court considers whether "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay v. Humana, Inc.,* 382 F.3d 1241, 1269 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008).  Rule 23(b)(3) sets forth a non-exclusive list of factors for a court to consider when determining the superiority of a class action, including:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Rule 23(b)(3).  "When determining if a class action is superior, 'we are not assessing whether this class action will create significant management problems, but instead determining whether it will create relatively more management problems than any of the alternatives,'" such as separate lawsuits by class members.  *Hinson v. Bellsouth Telecommunications, Inc.,* 275 F.R.D. 638, 648 (M.D. Fla. 2011) (quoting *Klay*, 382 F.3d at 1273).  Here, each of these factors favors certification.  "Courts routinely hold that a class action is superior where, as here, potential Class Members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently

employed by Defendants." *Whitehorn v. Wolfgang's Steakhouse, Inc.,* 275 F.R.D. 193, 200 (S.D.N.Y. 2011) (citing other cases)

Here, the class procedure is the best way to resolve these pending issues. Plaintiff is unaware of any Class Members interested in "controlling the prosecution . . . of separate actions" or of any other pending wage and hour lawsuits against Defendants by putative Class Members. Furthermore, the value of each individual claim, while not insignificant, is far less than the costs of litigation, as set forth on Exhibit 1 to the Settlement (DE 54-1).

Moreover, because a number of Class Members are still employed, (Reynolds Suppl. Decl. (DE 54-5), ¶3), this fact weighs in favor of finding certification of an opt out class action superior, since such individuals may be fearful of affirmatively joining or filing their own lawsuits in the wage claim context. *See Torres v. Gristede's Operating Corp.,* 2006 WL 2819730, at *16 (S.D. NY Sept. 26, 2006) ("since some class members are still employees of Defendants', class members may fear reprisal and would not be inclined to pursue individual claims."); *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 163 (S.D. N.Y. 2008) ("Indeed, it may be that in the wage claim context, the opt-out nature of a class action is a valuable feature lacking in an FLSA collective action, insofar as many employees will be reluctant to participate in the action due to fears of retaliation.") (internal citations omitted).

A class action is superior to litigating thirty-five claims without a class-wide liability inquiry. Numerous individual actions would waste judicial resources and create the danger of conflicting outcomes. The Parties seek to resolve the claims of the Settlement Class together, and it would be a waste of judicial resources for individuals to be required to proceed separately.

Finally, there will be no difficulties in managing the claims on a class basis. The Settlement Class Members can be identified through Defendants' records. Damage calculations are readily determinable through a review of Defendants' records and application of the same formula to each Class Member. The Plaintiff anticipates no administrative difficulties in managing the class settlement with the assistance of the Settlement Claims Administrator.

Accordingly, all of Rule 23's requirements have been met for the purpose of certifying a settlement class.

### F.  Approval of the Class Settlement Is Appropriate

While Rule 23(e) does not provide any standards for settlement approval, it is well-established in this Circuit that "in order to approve a settlement, the district court must find that it

'is fair, adequate and reasonable and is not the product of collusion between the parties.'"
*Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984) (quoting *Cotton v. Hinton,* 559 F.2d
1326, 1330 (5th Cir.1977)); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350,
1354 (11th Cir. 1982) (settlement approval of FLSA claims is appropriate in the "adversarial
context" because "the settlement is more likely to reflect a reasonable compromise of disputed
issues than a mere waiver of statutory rights brought about by an employer's overreaching").  In
determining whether a settlement was negotiated at arms-length, courts tend to look at whether
there was "vigorous and comprehensive litigation" or whether the settlement was a result of
collusion among the parties.  *Diaz v. Hillsborough County Hosp. Auth.*, 2000 WL 1682918, *6
(M.D. Fla. Aug. 7, 2000).  In considering a class settlement, "a court, absent fraud, collusion, or
the like, should be hesitant to substitute its own judgment for that of counsel." *Canupp v. Liberty
Behavioral Healthcare, Corp.,* 447 2011 WL 6003986 (11th Cir. 2011) (per curiam) (emphasis
added) (quoting *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)).  When considering the
settlement, the "court is entitled to rely upon the judgment of experienced counsel for the
parties." *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977) (citation omitted).  The approval
of a proposed class action settlement is a matter of discretion for the trial court.  *See Leverso v.
SouthTrust Bank of Ala.,* 18 F.3d 1527, 1531 (11th Cir. 1994).  There is a strong judicial policy
favoring settlements.  *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984).

     The Eleventh Circuit has identified six factors a court should consider when determining
whether a settlement is fair: (1) the likelihood of success at trial; (2) the range of possible
recovery; (3) the point on or below the range of possible recovery at which a settlement is fair,
adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance
and amount of opposition to the settlement; and (6) the stage of proceedings at which the
settlement was achieved.  *Bennett*, 737 F.2d at 986.

### 1.  *The Settlement Is Fair and Was Reached By Arm's-Length Negotiations*

### (a) The Likelihood of Success at Trial

     As to the *first Bennet* factor in evaluating the fairness of the Settlement, the likelihood of
success at trial, the Plaintiff believes that the common facts, and application of law to these facts,
establish a strong case for class certification and a judgment on the merits of Plaintiff's claims
that Defendants are not entitled to a tip credit, and that Defendants failed to pay bartenders for all
hours worked.  These claims are discussed more fully in §II.D.2, II.E.1, *supra,* and II.F.1(b),

*infra*. Defendants, however, denied liability, would have opposed Plaintiff's motion for class certification, could have later moved for decertification of the class and collection action, and either party could have appealed a certification decision. Establishing Defendants' liability would require substantial litigation, especially with respect to the off-the-clock claim, and would have required favorable outcomes at trial and on appeal. Settlement in this case avoided the risks inherent in continued litigation, and uncertainty of the outcome at trial.

### (b) Range of Possible Recoveries And Range at Which Settlement Is Fair

As to the *second* and *third* factors, the range of possible recoveries and the range at which settlement is fair, the relief sought in the settlement is reasonable and within the range of remedies permitted by law. Indeed, with respect to the Plaintiff's claim that the Defendants are not entitled to a $3.02 per hour tip credit, under the terms of the Settlement, Class Members will recover 100% of the $3.02 tip credit for every record hour worked over a four-year period (i.e. February 21, 2013 to February 21, 2017). Class Members who did not work any hours during that period, but worked hours only in the fifth year, (i.e. February 21, 2012 to February 20, 2013), will receive $100.00 under the Settlement. The total settlement amount for the thirty-three (33) Qualified Claimants who did not opt out is calculated at $205,587.97, as set forth in Exhibit 1 to the Settlement (DE 54-1). For example, the Plaintiff Reynolds's record hours total 4,273.50 for that period, and he will receive $12,905.97 for those hours (i.e. $3.02 x 4,273.50 hours) under the Settlement.

Moreover, every Class Member who does not opt out of the Settlement will receive such a payment. If a Qualified Claimant does not cash or otherwise negotiate his settlement check, such amount will be paid to the Florida Department of Financial Services' Bureau of Unclaimed. Settlement, Part V, p. 7. The payments will *not* be limited to those individuals who opt in to this case. In addition to the back wage payments to Class Members, Defendants have agreed to pay the employer's share of the payroll taxes, a service fee, attorneys' fees and costs, and the Settlement Administrator fee. Those expenses will not diminish the Class Members' recoveries.

With respect to the alleged off-the-clock claim, throughout the litigation, the Defendants adamantly denied bartenders worked any hours off-the-clock. The off-the-clock claims of bartenders would have been costly and time consuming to prove, and would have required a trial to resolve, given the factual disputes and the need to prove such claims through testimony. Damages would have been time consuming to calculate for the class, and there was risk of no

recovery.  Settlement was reached after the Plaintiff had the opportunity to review extensive documentation of his time and pay records.  After the Plaintiff had the opportunity to review a copy of his time and pay records for the time period at issue, (which he did not have when he provided his initial estimate of his claim), he was able to provide to Defendants a better estimate of his off-the-clock hours, which was not as extensive as he originally calculated. DE 54-5, Reynolds Suppl. Decl. ¶5.

Similarly, the Plaintiff's claim for recoupment for money he paid to buy logo shirts for work was only about $240.  Defendants disputed bartenders had to pay for logo t-shirts, and maintained they were provided free of charge. This claim is relatively small, and involved a *bona fide* factual dispute.  It also most probably would have had to be resolved at trial through live testimony given the factual disputes. Similarly, the claim for recoupment of tips is a relatively small part of the Plaintiff's claim, was disputed as to entitlement and amount by Defendants, and would have required trial testimony.

There also exists a *bona fide* dispute as to Class Member's entitlement to liquidated damages and recovery of damages for a fifth year for willful violations.  Throughout litigation of this case, Defendants disputed Plaintiff's entitlement to liquidated damages or a fifth year for willful violations. Thus, a compromise of the disputed claims for liquidated damages and willful violations was justified.

Based on the above analysis regarding the rage of recoveries, the Qualified Claimants are recovering on the higher end of the range of possible recoveries.  Accordingly, the Settlement is well within the range at which a settlement is fair.

### (c)  Litigation Would Be Complex, Costly, and Time Consuming

As to the *fourth* factor, the complexity, expense and duration of litigation, as discussed above, these claims would have required extensive discovery and a trial to resolve, given the factual disputes. By reaching a Settlement prior to dispositive motions or trial, the Parties have avoided significant expense and delay, and have ensured a speedy, certain recovery for the Class. Although there has been significant written discovery already, additional discovery would be required to establish liability and damages, including depositions of class members, Defendants, Defendants' employees, managers, and accountants/bookkeepers.  Had the matter not resolved, Defendants likely would have moved to decertify the preliminarily certified FLSA collective action and would have opposed Rule 23 class certification, the Parties likely would have filed

cross-motions for summary judgment, and many disputed issues would have required a trial requiring substantial judicial and attorney resources. Given the legal and factual disputes, any judgment would likely have been appealed.

### (d)   Reaction to the Settlement

#### 1.   Two Individuals Timely Submitted Requests for Exclusion

As to the *fifth* factor, the substance and amount of opposition to the settlement, none of the putative Class Members has filed a timely objection to the Settlement. Two putative Class Members, Billie Bowman and Ryan Acker, timely opted out of the Settlement. **Exhibits B and C**, attached hereto. Two requests for exclusion is a low number. As discussed more fully below, it is unclear if Wade Hoffman's untimely request for exclusion is also an untimely objection.

#### (i)   Hoffman's Untimely Request for Exclusion

As set forth in the Declaration of the Settlement Administrator, the requests for exclusion submitted by Wade Hoffman, (**Exhibit E**), was postmarked on January 6, 2018, and received by the Settlement Administrator on January 11, 2018, which is seven (7) days after the January 4, 2017 deadline to opt out. Simpluris Decl. ¶10.   Mr. Hoffman did not provide any reason for the untimeliness of his submission.

In order to extend the opt out deadline, individuals must establish the untimely submission was the result of excusable neglect pursuant to Fed.R.Civ.P. 6(b)(2). *Haney v. Miami-Dade County*, 194 Fed. Appx. 715 (11th Cir. 2006) (per curiam) (affirming district court's denial of untimely motion of class member to opt out of class settlement where it was not a result of excusable neglect); *Grilli v. Metro. Life Ins. Co., Inc.,* 78 F.3d 1533, 1538 (11th Cir. 1996) (per curiam) (finding no abuse of discretion in the district court's refusal to allow late opt-outs where movant failed to meet the "excusable neglect" standard of Rule 6(b)(2).

Although it does not appear the excusable neglect standard has been met, the Parties have no objection to allowing Mr. Hoffman to opt out of the Settlement.

#### (ii)   Hoffman's Untimely Submission is Not a Valid Objection

It is unclear whether Mr. Hoffman also is attempting to object to the Settlement, or merely provide personal reasons why he does not want to be part of the Settlement. To the extent the Court construes Mr. Hoffman's submission as an objection, however, the Plaintiff maintains it should be rejected as untimely. Mr. Hoffman has not provided an explanation for why his submission was untimely, and therefore has not met the standard for excusable neglect. *E.g., Ass'n for Disabled*

*Ams., Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 475 (S.D.Fla.2002) ("Objectors also are barred from being heard due to their violation of the Court's objection filing deadline*."*); *Harshbarger v. Penn Mut. Life Ins. Co.,* 2017 WL 6525783, at *3 (E.D. Pa. Dec. 20, 2017) (declining to consider merits of untimely objection to settlement) (citing *See In re Centocor, Inc. Sec. Litig.*, 1993 WL 189937, at *4 n.5 (E.D. Pa. June 2, 1993) (court refused to consider untimely objections); *see also Yarrington v. Solvay Pharm., Inc.,* 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) ("For an objection to a settlement to be considered by the Court on the merits, it must be timely filed")).

Moreover, if the Court permits Mr. Hoffman to opt out and construes the submission as an objection, then the Court also should not consider such objection because Mr. Hoffman lacks standing to make an objection to the Settlement. "It is firmly established . . . that class members who opt out of the class and are thus not parties to the settlement lack standing to object to the settlement. *In re Vitamins Antitrust Litig.*, 99-197 TFH, 2000 WL 1737867, at *5 (D.D.C. Mar. 31, 2000) (citing *Mayfield v. Barr,* 985 F.2d 1090, 1092 (D.C.Cir.1993); *Agretti v. ANR Freight Sys., Inc.,* 982 F.2d 242, 245, 246–48 (7th Cir.1992); *Pigford,* 185 F.R.D. at 103 n.17; *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979)). "These decisions rest "on the principle that those who fully preserve their legal rights cannot challenge an order approving an agreement resolving the legal rights of others." *Id.* (quoting *Mayfield,* 985 F.2d at 1093. *See also*, *Jenson v. Continental Finance Corp.,* 591 F.2d 477, 482 n. 7 (8th Cir.1979) ("Opt-outs ... are not members of the class and hence are not entitled to the protection of Rule 23(e)."); *Newberg on Class Actions* § 13:22 (5th ed. 2016) ("Courts regularly find that non Class Members have no standing to object to a proposed settlement or to the notice thereof" because such opt outs "are no longer class members. . . .") (footnotes omitted).

Finally, to the extent the Court construes Hoffman's submission as an objection and decides to consider it, over the Plaintiff's objection, then it should be overruled as lacking merit. Mr. Hoffman appears to be saying he does not want to be part of the Settlement because he purportedly received free drinks, attended events for free, and agreed to have shortages deducted from his tips. Such statements do not relate to the fairness or adequacy of the Settlement for Class Member and should be rejected as meritless.

### (e)  The Case Is at an Appropriate Stage for Settlement

As to the *sixth* factor, the stage of the proceeding at which settlement was achieved, the Parties reached a settlement following almost five months of hotly contested litigation, with the aid of experienced wage and hour attorneys.  The settlement was reached after considerable written discovery had been taken, after review of more than 3,467 pages of documents, and after considerable investigation of the Plaintiff's claims.  The Parties were well-equipped to evaluate the strengths and weaknesses of the case.

Based on the foregoing six factors, which all favor settlement approval, the Settlement is fair and, therefore, should be approved.  Moreover, based upon their experience in wage and hour collective and class actions, Plaintiff's counsel believe the Settlement Agreement is fair, adequate, and worthy of approval. DE 54-6, S. Bober Decl. at ¶4-5.  It bears all the indicia of fairness warranting approval as the Plaintiff was represented by experienced counsel, who in the "adversarial context of a lawsuit," engaged in "serious, informed, arms-length negotiations" of "a *bona fide* dispute … under the Act."  *Id.*; *see also Lynn's Food Stores, Inc.*, 679 F.2d at 1353-54.  It is the judgment of Plaintiff's counsel that this is a Settlement of significant value to Settlement Class Members and that, when compared to the risks, costs, uncertainty, and delay which are tantamount to continued litigation, the benefits of the Settlement weigh largely in favor of approval.  DE 54-6, S. Bober Decl. at ¶5.

### (f)  The Settlement Was Not a Product of Fraud or Collusion

The Settlement was not a product of collusion. It was negotiated at arm's-length in the adversarial context of this lawsuit.  The Parties were represented by skilled attorneys, and there is no evidence of unethical behavior or lack of zeal by class counsel.  Furthermore, aside from the modest service award requests, the Named Plaintiff's damages are being calculated by the same formula as other Class Members' damages.

### G.  Service Payment to the Named Plaintiff Is Warranted

The Defendants have agreed to pay a modest service payment of $3,500.00 to the Named Plaintiff who spent time and effort litigating this case on behalf of the Settlement Class to his potential detriment.   Reynolds Suppl. Decl. ¶4. S. Bober Suppl. Decl. ¶8. Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide on behalf of a class, and the risks they incurred during class action litigation.  *See e.g.*, *Allapattah Servs. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006) (recognizing that "there is ample

22

precedent for awarding incentive compensation to class representatives"). This modest service amount is appropriate, reasonable, and consistent with awards made in other cases. *See e.g., North Star Capital Acquisitions, LLC v. Krig*, 2011 WL 65662 (M.D. Fla. 2011) ($5,000 in service award per class representative approved); *Holman v. Student Loan Xpress, Inc.*, 778 F. Supp. 2d 1306, 1315, 1319 (M.D. Fla. 2011) (service awards of no more than $5,000 approved as "consistent with prevailing practice"). The service payment does not diminish the award of other Class Members. Finally, even though the requested service award is reasonable, the Settlement is not contingent on the payment of the service fee.

### H. <u>Approval of the FLSA Collective Action Settlement Is Also Appropriate</u>

If the Court approves the Rule 23 class settlement, then it also should approve the settlement of the FLSA claims for those individuals who endorse, deposit, or cash their settlement checks. The procedure for settling a FLSA collective action is generally less stringent than the procedure for settling a Rule 23 class action. *See Tyson Foods, Inc. v. Bouaphakeo*, _ U.S. _, 136 S.Ct. 1036, 1045 (2016) (The Supreme Court "assume[d], without deciding ... that the standard for certifying a collective action under the FLSA is no more stringent than the standard for certifying a class under [Rule 23]."). In evaluating an FLSA collective action settlement, the Court must determine whether it constitutes "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-1353 (11th Cir. 1982). As set forth above at Part IV.F, *supra*, which discusses the settlement terms and fairness, the settlement meets this standard.

In addition, in deciding whether to grant final certification of a collective action, courts consider factors such as (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individuals to each plaintiff; [and] (3) fairness and procedural considerations[.]" *Anderson v. Cagle, Inc.,* 488 F.3d 945, 953 (11th Cir. 2007) (citation and quotation omitted). "Although the FLSA does not require potential class members to hold identical positions, the similarities . . . must extend beyond mere facts of job duties and pay provisions" and encompass defenses to some extent. *Id.* at 953. As set forth above, and particularly in section D.2, D.3, and E, these requirements have been met.

I.   **Defendants Should Be Directed to Provide Documentation of Cashed Checks**

Pursuant to the Parties' Settlement, Defendants Schroeder and Bourbon Street are responsible for issuing the checks from their account, providing the checks to the Claims Administrator, and the Claims Administrator is responsible for mailing the settlement checks to Class Members who have not opted out of the Settlement.  Settlement (DE 54-1), Part VI page 8. Accordingly, documentation regarding whether a settlement check is endorsed, deposited, or cashed will be available only to the Defendants unless the Defendants provide such information to the Settlement Administrator.  Moreover, only Class Members who do not opt out of the settlement <u>and</u> who endorse, deposit, or cash a settlement check will release all FLSA claims for overtime and minimum wages asserted in the Complaint from February 21, 2014 to February 21, 2017.  DE 54-1, Part VII, pages 8-9.

Pursuant to the terms of the Settlement, the Claims Administrator is required to "report[] claims statistics to Plaintiff's counsel including providing a report on uncashed checks sixty (60) days and one hundred (100) days after the Settlement Claims Administrator mails checks to the Qualified Claimants along with a final report of all checks negotiated . . . ."  Settlement, (DE 54-1) at Part II(xvi) page 3).  Moreover, during the Parties settlement discussions, the Plaintiff proposed that "Defendants or the class administrator will give Plaintiff's counsel updates at 30, 60, and 90 and 120 days regarding uncashed checks," (6/20/17 at 4:47 pm email from Chris Deem to Samara Bober), and the Parties ultimately agreed that the Plaintiff "would need at least 2 updates from the claims administrator on . . . uncashed checks."  6/20/17 at 5:28 pm Email from Samara Bober to Chris Deem.

Thus, to determine which Class Member has waived his FLSA, and in order for the Settlement Administrator to meet its reporting obligation to the Plaintiff's counsel as set forth in the Settlement, the Defendants must provide documentation of cashed checks to the Claims Administrator. Therefore, the Plaintiff requests that the Court include in its order approving the Settlement that the Defendants be required to provide documentation of all settlement checks that Class Members endorse, deposit, or cash on a timely basis so that the Claims Administrator can timely provide report regarding cashed settlement checks at 60, 100 and after 120 days of mailing those checks, as agreed to in the Settlement.  Moreover, since the Settlement requires the Defendants to pay any uncashed check to the Florida Department of Financial Services' Bureau of Unclaimed Property with an identification of the Class Member to whom the check was

issued, (Settlement (DE 54-1, Part V at page 7), the Court should also direct the Defendants to provide a reporting of which class members have money sent there.

### J.  Parties' Request for Continuing Jurisdiction

Pursuant to the Settlement, (DE 54-1 at Part XIX p. 15), the Parties request Court retain "continuing jurisdiction to construe, interpret and enforce the provisions of this Agreement; to supervise the administration and distribution of the resulting settlement funds; and, to hear and adjudicate any dispute, enforcement, or litigation arising from or related to this Agreement."

### K.  Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order (1) granting this Unopposed Motion, (2) finally approving the Settlement; (3) certifying for settlement purposes the Settlement Class pursuant to Fed.R.Civ.P. 23(a), (b)(3) and certifying the FLSA collective action; (4) appointing Timothy Reynolds as class representative; (5) appointing as Class Counsel Samara Robbins Bober and Peter Bober of the law firm of Bober & Bober, P.A.; (6) directing settlement payments be made consistent with the Settlement; (7) requiring Defendants to provide documentation of settlement checks endorsed, deposited, or cashed and of checks paid to the to the Florida Department of Financial Services' Bureau of Unclaimed Property to the Settlement Administrator so it can report which Class Members have released their FLSA claims, as required by the Settlement; (8) retaining continuing jurisdiction over Plaintiff, the Settlement Class, and Defendants to implement, administer, consummate and enforce the Settlement Agreement and the Court's Order of Final Approval of Settlement; (9) dismissing with prejudice the Action, and dismissing with prejudice New Orleans House of Key West, consistent with the terms of the Settlement; (10) declaring the Settlement binding on all Class Members who did not opt out of the Settlement; and (11) granting such further relief as the Court deems just.  A proposed, agreed Order is attached hereto as **Exhibit F**.


### CERTIFICATE OF CONFERRAL

The Plaintiff's counsel has conferred with counsel for the Defendants, and is authorized to represent that the Defendants do not oppose this Motion.

Respectfully submitted,

s/. Samara Robbins Bober
SAMARA ROBBINS BOBER
FBN: 0156248
PETER J. BOBER
FBN: 0122955
BOBER & BOBER, P.A.
1930 Tyler Street
Hollywood, Florida  33020
Telephone: (954) 922-2298
Facsimile: (954) 922-5455
peter@boberlaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s Samara Robbins Bober

## SERVICE LIST

CASE NO. 4:17-cv-10023-MOORE/McAliley

Christopher B. Deem
SMITH / HAWKS, PL
138 Simonton Street
Key West, Florida 33040
Telephone: (305) 296-7227
Facsimile: (305) 296-8448
Primary: Chris@SmithHawks.com
Secondary: Brandi@SmithHawks.com
*Attorneys for Defendants*

26